# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

LARRY C. HAYES,
       Plaintiff,                                                   No. 05- 2282

v.

PATRICK HARTSHORN, ET AL.,

## MEMORANDUM OPINION AND ORDER

      Before the court is the defendants' unopposed summary judgment motion [56]. On October 11, 2006, *pro se* Plaintiff Larry C. Hayes filed an Amended Complaint, pursuant to 42 U.S.C. § 1983, against the following Defendants: Sheriff Patrick Hartshorn, Captain John Howard, and Nurse Lynn Galloway. The court allowed the plaintiff to proceed against the Defendants in their individual capacities for the following Eighth Amendment violations: (1) excessive force; (2) failure to protect; (3) deliberate indifference to serious medical needs; and (4) inhumane conditions of confinement. These claims allegedly arise from the injuries and treatment Plaintiff received during and subsequent to his physical altercation with another inmate on November 4, 2005. Defendants now move this Court for summary judgment.

## Standard

      Summary judgment should be granted when the pleadings, and any depositions, answers to interrogatories, admissions on file, or affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The mere existence of factual disputes will not preclude the granting of a motion for summary judgment when the dispute does not involve a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). Material facts are identified by the substantive law involved, and to constitute a "genuine issue," the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Id*. When the evidence is not significantly probative or is merely colorable, summary judgment is proper. *Id*. at 249-50.

## Statement of Undisputed Facts[1]

1.    On October 11, 2006, *pro se* Plaintiff, Larry C. Hayes, filed an Amended Complaint against Sheriff Patrick Hartshorn, Captain John Howard, Jack Howard, "Barrett," "Luke," and "Linda or a.k.a. Nurse Cookie." See ECF Dkt. Rep., # 21.
2.    On July 12, 2007, this Court dismissed all claims against Defendants in their official capacities and held that Plaintiff's Amended Complaint contained only the following four claims alleged against Defendants in their individual capacities: (a) excessive force; (b) failure to protect; (c) deliberate indifference to serious medical needs; and (d) inhumane conditions of confinement. See ECF Merit Review Order, July 12, 2007.

---

[1]Exhbits to Statement of Undisputed Facts can be found at d/e 58.

3. Only Defendants Patrick Hartshorn, John Howard and Nurse Lynn "Cookie" Galloway were served with Plaintiff's Amended Complaint. See ECF Dkt. Rep., ## 35-39 and Orders, Aug. 15, 2007, and Aug. 29, 2007.
4. Plaintiff's claims against Defendants Hartshorn, Howard, and Galloway arise from an incident on November 4, 2005, at the Vermilion County Jail, located at the Public Safety Building at 2 East South Street, Danville, Illinois 61832. (Plaintiff's Amended Complaint, attached hereto as Exhibit A).
5. At all times relevant, Defendant Hartshorn was Sheriff of the Vermilion County Sheriff's Department, Defendant Howard was Captain of the Patrol Division of the Vermilion County Sheriff's Department, and Defendant Galloway was head nurse of the Vermilion County Jail located at the Danville Public Safety Building. (Sheriff Hartshorn, Captain Howard and Nurse Galloway Affidavits, ¶¶ 1-3, respectively, and attached hereto as Group Exhibit B).
6. On Friday, November 4, 2005, at approximately 5:30 p.m., Plaintiff and the other inmates at the Vermilion County Jail were being served dinner in the day room. (Plaintiff's Deposition, pp. 10-12, attached hereto as Group Exhibit C).
7. Prior to Plaintiff receiving his dinner, he and fellow inmate, Andre Hanserd, engaged in a physical altercation. (Grp. Ex. C, Pl. Dep., pp. 10-12).
8. Plaintiff testified that during this altercation, he hit Hanserd with "a couple of shots," resulting in Hanserd bleeding from his mouth. (Grp. Ex. C, Pl. Dep., p. 19).
9. Correctional officers then told the inmates "to lock up" before three correctional officers entered the day room to break up the fight. (Grp. Ex. C, Pl. Dep., p. 14).
10. Plaintiff continued to fight Hanserd. (Grp. Ex. C, Pl. Dep., p. 54).
11. According to Plaintiff, Correctional Officer Luke Smith sprayed pepper spray on Plaintiff and took Plaintiff to the ground to break up the physical altercation. (Grp. Ex. C, Pl. Dep., pp. 14-16, 54-56).
12. Officer Smith then handcuffed Plaintiff, before escorting him to the visiting room, where Plaintiff remained for approximately fifteen minutes. (Grp. Ex. C, Pl. Dep., pp. 19-20).
13. Officer Smith then escorted Plaintiff to his cell to collect his belongings. (Grp. Ex. C, Pl. Dep., pp. 24, 26).
14. "Some officer named Jack" then escorted Plaintiff from his cell to isolation cell J102, where Plaintiff remained for 72 hours. (Grp. Ex. C, Pl. Dep., pp. 26, 33, 48; ECF Order, Sept. 19, 2007; and Grp. Ex. B, Captain Howard Aff., ¶¶ 3-5).
15. During the physical altercation with Hanserd, and prior to correctional officers arriving and separating the inmates, Plaintiff hit his hand on a metal staircase. (Grp. Ex. C, Pl. Dep., pp. 12, 19).
16. Plaintiff admitted that he did not suspect his hand was injured "until after [the correctional officers] put me in seg[regation]." (Grp. Ex. C, Pl. Dep., p. 19).
17. Office Crawley stated in his report regarding the incident that Plaintiff did not sustain any injuries requiring immediate medical attention. (Officer Crawley Memo. to Captain Riggs, attached hereto as Exhibit D).
18. Plaintiff testified that once in segregation, he requested to see the nurse to receive pain medication because his hand hurt. (Grp. Ex. C, Pl. Dep., pp. 35, 45).
19. Correctional officers told Plaintiff that because it was the weekend, the doctor was not on duty. (Grp. Ex. C, Pl. Dep., p. 32; Grp. Ex. B, Nurse Galloway Aff., ¶ 3).
20. Plaintiff also testified that after the physical altercation he had mace in his eyes and blood

on his clothes.  (Grp. Ex. C, Pl. Dep., pp. 28-29).
21. According to Plaintiff, Officers Smith, "Jack," Barrett and Kay refused to provide Plaintiff a change of clothes or permission to shower after the altercation and while in isolation.  (Grp. Ex. C, Pl. Dep., pp. 28-29).
22. Plaintiff testified that isolation cell J102 had a sink that "barely" dispersed water and that he "had to set the towel in the sink and let the water trickle down" to wash his face and eyes.  (Grp. Ex. C, Pl. Dep., p. 39).
23. On Tuesday, November 8, 2005, Plaintiff was removed from isolation, and within approximately three hours of his removal, Plaintiff was seen by Defendant Nurse Galloway.  (Grp. Ex. B, Nurse Galloway Aff., ¶¶ 3-4; Grp. Ex. C, Pl. Dep., pp. 37, 45, 52).
24. Plaintiff complained to Nurse Galloway only of pain to his right hand, resulting from his fight with Hanserd on November 4, 2005.  (Grp. Ex. C, Pl. Dep., pp. 37-38, 52, 59; Grp. Ex. B, Nurse Galloway Aff., ¶¶ 4-5).
25. At no time prior to Nurse Galloway's examination of Plaintiff on November 8, 2005, did Nurse Galloway have any knowledge of Plaintiff's condition or any request for treatment.  (Grp. Ex. B, Nurse Galloway Aff., ¶6).
26. Plaintiff testified that "[i]t wasn't her fault that I didn't get there earlier."  (Grp. Ex. C, Pl. Dep., p. 37).
27. Nurse Galloway examined Plaintiff for approximately fifteen minutes, and then scheduled Plaintiff to be examined by a doctor.  (Grp. Ex. C, Pl. Dep., pp. 38, 52; Grp. Ex. B, Nurse Galloway Aff., ¶ 7).
28. Within three hours of Nurse Galloway's examination, Plaintiff was taken to the Provena United Samaritans Medical Center and Plaintiff's right hand was x-rayed; the x-ray disclosed a fracture of Plaintiff's fifth metacarpal bone.  (Plaintiff's Nov. 8, 2005, Medical Records: "Diagnostic Imaging" report, "Primary Radiology" report, and Nurse Galloway "Health Status Summary Report," attached hereto as Group Exhibit E; Grp. Ex. C, Pl. Dep., pp. 42, 45-46, 52).
29. Plaintiff also received a shower on November 8, 2005. (Grp. Ex. C, Pl. Dep., p. 60).
30. Nurse Galloway scheduled the next available appointment for Plaintiff's hand to be casted, which was on November 10, 2005, with the Carle Clinic Department of Orthopedics-Danville. (Grp. Ex. B, Nurse Galloway Aff., ¶ 9; Plaintiff's Nov. 10, 2005, Medical Records: "Department of Orthopedics" report and "Carle Clinic Association" note, attached hereto as Group Exhibit F; Grp. Ex. C, Pl. Dep., pp. 41, 57).
31. On November 10, 2005, the doctor at Carle Clinic assessed Plaintiff's injury as a "boxer's fracture" and casted Plaintiff's hand without any complication. (Grp. Ex. B, Nurse Galloway Aff., ¶ 10; Grp. Ex. F, Plaintiff's Nov. 10, 2005, Medical Records).
32. After having a cast put on Plaintiff's right hand, Plaintiff was given pain medication, placed back in isolation for his protection, and remained in isolation until his transfer to the Taylorville Correctional Center on November 21, 2005.  (Grp. Ex. C, Pl. Dep., pp. 45-46, 64).
33. Plaintiff testified that he never had a conversation with Defendant Hartshorn about his injury or treatment and that Hartshorn did not have any knowledge of Plaintiff's alleged injuries or any allegation contained in Plaintiff's Amended Complaint; rather, Plaintiff sued Hartshorn because he was the Sheriff.  (Grp. Ex. C, Pl. Dep., pp. 47, 50-51; Grp. Ex. B, Sheriff Hartshorn Aff., ¶ 3).

34. Plaintiff further testified that only because of this Court's Sept. 19, 2007, Order, did he believe that "[s]ome officer named Jack" is Defendant Howard; nevertheless, Plaintiff testified that "Howard" never physically mistreated Plaintiff, and that "Howard's" only involvement regarding either the alleged incident on November 4, 2005, or Plaintiff's subsequent treatment was limited to Plaintiff's single, verbal request for "some pills." (Grp. Ex. C, Pl. Dep., pp. 26, 47-48, 56; Grp. Ex. B, Captain Howard Aff., ¶¶ 2-5; see also ECF Order, Sept. 19, 2007).
35. Plaintiff's only "complaint" against Defendant Galloway is that she did not give Plaintiff any pain medication upon seeing him on November 8, 2005. (Grp. Ex. C, Pl. Dep., p. 52).
36. Plaintiff admitted that upon having his hand casted on November 10, 2005, he received aspirin for the pain. (Grp. Ex. C, Pl. Dep., pp. 56-57).
37. Plaintiff admitted that the request slip he sent to Defendant Hartshorn, referenced in paragraph 14 of Plaintiff's Amended Complaint, requested only the names of various correctional officers. (Grp. Ex. C, Pl. Dep., p. 60).
38. Finally, on January 16, 2008, Plaintiff moved this Court to add inmate Hanserd as a Defendant. See ECF Dkt. Rep., # 53.
39. This Honorable Court denied Plaintiff's Motion because Plaintiff sought to add Hanserd after the two year statute of limitations had expired. See ECF Order, May 9, 2008.

### Arguments, Discussion and Conclusion of Law

As noted supra, Plaintiff has alleged four claims against Defendants Hartshorn, Howard and Galloway, in their individual capacities. See ECF Dkt. Rep., [21]. The Defendants argue that these claims are deficient for two reasons: first, there is no evidence that the named Defendants were personally responsible for the alleged constitutional deprivations; and second, the evidence demonstrates that Plaintiff's constitutional rights were not violated. Defendants argue that accordingly, they are entitled to summary judgment.

The Defendants assert that the record contains no evidence that any defendant used excessive force against Plaintiff. Under Section 1983, there is no *respondeat superior* theory of liability. *Wolf-Lillie v. Sonquist*, 699 F.2d 865, 869 (7th Cir. 1983)(*citing Polk Co. v. Dodson,* 454 U.S. 312, 325 (1981)). Thus, "[i]t is essential" the defendant be personally responsible for the deprivation of a constitutional right." *Hollgarth v. Dawson*, Case No. 05-2125, 2007 WL 2812151, *9 (C.D.Ill. Sept. 19, 2007)(*citing Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) and *Walker v. Peters*, 223 F.3d 494, 502 (7th Cir. 2000)). To be personally responsible, the plaintiff must provide evidence establishing "direct responsibility," a "causal connection" or "an affirmative link" between the defendants and the improper action. *Wolf-Lillie*, 699 F.2d at 869. When alleging excessive force, for example, a plaintiff must present evidence demonstrating that the defendants directly, "maliciously and sadistically caused harm." *See Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004). *De minimus* use of force does not state a claim unless the use of force is "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10. Moreover, the Supreme Court has stated that when actual unrest and violence arises in a prison, the admonition that "'a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators' carries special weight." *Whitely v. Albers*, 475 U.S. 312, 321 (1986)(internal citations omitted); *see*

*also Hudson*, 503 U.S. at 9 (not every malevolent touch by a prison guard gives rise to an excessive force claim even if the force may later seem unnecessary in the peace of a judge's chambers). In the case sub judice, Plaintiff claims that Correctional Officer Luke Smith pepper sprayed him and then took him to the ground to break up the physical altercation between Plaintiff and inmate Hanserd. Defs. Stat. Facts, ¶ 11. However, there is no evidence that the named Defendants were "directly responsible" for Plaintiff's injuries. Plaintiff does not claim that Sheriff Hartshorn used excessive force or that he was even present for the incident. Rather, Plaintiff admitted that he never conversed with Sheriff Hartshorn about his alleged injuries and that the Sheriff had no knowledge of the allegations contained in Plaintiff's Complaint. Id. at ¶ 33. Plaintiff testified that he named Sheriff Hartshorn as a Defendant only because he was the Sheriff. *Id*. Defendant Howard also lacked sufficient personal involvement to be held liable in this case. It is undisputed that Howard was not present at the time of the incident, and that Howard did not cause or participate in any decision regarding Plaintiff's incarceration. Id. at ¶ 34. Plaintiff's inclusion of Howard as a Defendant is based solely upon his mistaken belief that "[s]ome officer named Jack" is the same person as Defendant John Howard. Id. at ¶¶ 14, 34. Notwithstanding the lack of evidence in the record to support this belief, Plaintiff has testified that "Howard" never physically mistreated him and that "Howard's" only personal involvement with Plaintiff was to refuse his request for "some pills." *Id*. at ¶ 34.

Likewise, with respect to Nurse Galloway, Plaintiff's sole complaint against her was that she did not give Plaintiff any pain medication on November 8, 2005. *Id*. at ¶ 35. However, Plaintiff testified that Nurse Galloway lacked any prior knowledge of Plaintiff's injury. *Id*. at ¶¶ 23-26. Because Plaintiff has failed to establish direct responsibility, a causal connection or an affirmative link between any of the Defendants' actions and Plaintiff's claim of excessive force, no genuine issue of material fact exists and Defendants are entitled to summary judgment on this claim.

The record also contains no evidence that any defendant failed to protect the plaintiff. To constitute an Eighth Amendment violation for failure to protect, an "inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. at 833. Although jail officials "have a duty . . . to protect prisoners from violence at the hands of other prisoners," a plaintiff must show "something approaching a total unconcern for [the inmate's welfare] in the face of serious risks." *Id*.; *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992), respectively. Thus, a defendant must have sufficient personal involvement; namely, "actual knowledge of impending harm easily preventable," such that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it. *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1986); *see e.g. Fisher v. Lovejoy*, 414 F.2d 659, 663-64 (7th Cir. 2005)(holding that correctional officer's observed stabbing of detainee by another inmate did not render officer deliberately indifferent to second attack on detainee perpetrated minutes later). In the record, there is no evidence that any of the Defendants had "actual" or "specific" knowledge of an impending harm to Plaintiff. Defendants Hartshorn, Howard and Galloway were neither present immediately before, during, or after Plaintiff's fight with inmate Hanserd, nor did they know that Plaintiff would fight inmate Hanserd and be injured. Plaintiff testified that he did not converse with Defendant Hartshorn regarding the incident and that Hartshorn did not have any knowledge of Plaintiff's alleged injuries or allegations. Defs. Stat. Facts, ¶ 33. Regarding Defendant Howard, even if this Court were to believe that "[s]ome officer

named Jack" is the same person as Defendant Howard, Plaintiff testified that Howard had no personal involvement in the incident and that Howard did not even know of the incident until after it occurred. *Id*. at ¶¶ 14, 21, 34. Similarly, Plaintiff's only complaint against Nurse Galloway was that she did not give Plaintiff any pain medication on November 8, 2005. *Id*. at ¶ 35. Therefore, because the record evidences that the Defendants had no actual or specific knowledge of a serious harm about to befall Plaintiff, they are, accordingly, entitled to summary judgment on this claim.

The facts in this case do not support plaintiff's claim that the defendants were deliberately indifferent to his serious medical needs. A claim of deliberate indifference requires Plaintiff to show not only that the medical condition from which he suffered was objectively serious, but also, subjectively, that Defendants knew of, but disregarded, the need for treatment. *Farmer*, 511 U.S. at 837. Although proof of deliberate indifference may be found where a prison official intentionally denies or delays access to medical care, "an inmate who complains that delay in medical treatment rose to [a] constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of [the] delay in medical treatment." *Wynn v. Lashbrook*, et al., No. 04-4086, 2008 WL 681482, *5 (C.D.Ill. 2008) (quoting *Langston v. Peters*, 100 F.3d 1234, 1240 (7th Cir. 1996)). Thus, it is "essential" that the plaintiff demonstrate that the named defendants were personally responsible for the delay in medical care, and that such delay caused plaintiff "substantial harm." *Porter v. Bodlovich*, No. 94-CV-0889, 1996 WL 535436, at *11 (N.D.Ind. Sept. 17, 1996)(*citing Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir. 1974) (cert. denied, 419 U.S. 879 (1974))); *see also Gentry*, 65 F.3d at 561 and *Walker*, 223 F.3d at 502. The record in this case shows that Defendants neither knew of a serious medical condition nor intentionally denied or delayed treatment for Plaintiff. It is undisputed that
Plaintiff never requested medical treatment from Defendants Hartshorn or Howard. In fact, those
Defendants had no knowledge of the incident or any requests by Plaintiff for medical treatment. Defs. Stat. Facts, ¶¶ 33-34. Even if this Court were to believe that "[s]ome officer named Jack" is Defendant Howard, Plaintiff's only complaint was that Howard denied Plaintiff "some pills" on November 5, 2005, and that Plaintiff did not receive any pain medication until November 10, 2005. *Id*. at ¶¶ 32, 34. However, there is no medical evidence in the record that Plaintiff incurred substantial harm because of this five day delay in receiving aspirin. With respect to Nurse Galloway, the record is clear that she did not delay in treating Plaintiff's broken hand. In fact, on the issue of receiving medical treatment, Plaintiff acknowledged that "it wasn't her (Galloway's) fault that I didn't get there earlier." *Id*. at ¶ 26. Specifically, Nurse Galloway did not learn of Plaintiff's injury until November 8, 2005. Id. at ¶¶ 23-27. At that time, Nurse Galloway examined Plaintiff, took Plaintiff for x-rays, and scheduled the next available appointment for Plaintiff's hand to be casted. *Id.* at ¶¶ 23-30. Plaintiff's hand was casted on November 10, 2005, and he was also given pain medication on that date. *Id*. at ¶¶ 31-32. Although Plaintiff's sole complaint against Nurse Galloway was that she did not give Plaintiff pain medication on November 8, 2005, there is no verifying medical evidence in the record that Plaintiff incurred substantial harm as a result of this two day delay in receiving pain medication. *Id*. at ¶¶ 26, 31, 35. In conclusion, Plaintiff has failed to present any evidence that Defendants Hartshorn, Howard or Galloway were deliberately indifferent to his serious medical needs.

There are no triable facts demonstrating that Defendants subjected Plaintiff to inhumane conditions of confinement. The Eighth Amendment prohibits conditions of confinement that "involve the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The conditions must be "sufficiently serious" and defendants must act with deliberate indifference to the plaintiff's health or safety such that the inmate is denied "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834-35. Such a standard requires "more than mere or gross negligence" but "something approaching a total unconcern for [the prisoner's] welfare in the face of serious risks." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). The defendant must intentionally disregard a known risk to the inmate's health or safety such that his actions were not just unreasonable, but reckless. *Collins v. Seeman*, 462 F.3d 757,762 (7th Cir. 2006). For example, the Seventh Circuit has held that sixteen months of cockroach and mice infestation, where plaintiff incurred significant physical harm stated a claim of inhumane conditions of confinement. *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996). However, weekly showers with unlimited access to a washbasin does not state a claim of inhumane conditions of confinement. *Davenport v. DeRobertis*, 844 F.2d 1310, 1316-17 (1988). In addition, waiting approximately ten to twenty minutes before allowing an inmate to wash off pepper spray does not deny the inmate "the minimal civilized measure of life's necessities." *Jones v. Shields*, 207 F.3d 491, 493-496 (8th Cir. 2000); *see also, Millbrook v. Prine*, No. 06-4043, 2007 WL 2937129, at *5 (C.D.Ill. June 28, 2007)(holding that where plaintiff later washed mace out of his eyes, was examined by a doctor the next day, and failed to produce medical evidence denoting injury, no constitutional violation occurred). Moreover, providing inmates with one change of clothing per month is constitutionally permissible. *See Coughlin v. Sheahan*, No. 94-C-2863, 1995 WL 12255, at *2-3 (N.D.Ill. Jan. 12, 1995).

In the case sub judice, there is no evidence of personal involvement by the Defendants or that Plaintiff experienced inhumane conditions of confinement. Plaintiff has testified that neither Defendant Hartshorn nor Nurse Galloway had any knowledge of or involvement regarding Plaintiff's conditions of confinement. Defs. Stat. Facts, ¶¶ 25-26, 33, 35. Defendant Howard similarly lacked any knowledge or direct responsibility regarding Plaintiff's confinement, as his duties were strictly limited to supervising the Vermilion County Patrol Division. *Id*. at ¶5. However, if this Court were to believe that Defendant Howard is the same person as "[s]ome officer named Jack," Plaintiff's claim remains deficient. Specifically, Plaintiff alleged that while confined in isolation for three days, he did not receive a change of clothes or a shower; and that after being pepper sprayed, he was refused permission to immediately wash the spray from his eyes. *Id*. at ¶¶ 20-21. However, it is undisputed that Plaintiff had a towel and unlimited access to a washbasin within approximately fifteen minutes of being sprayed. *Id*. at ¶¶ 12-14, 22. It is also undisputed that Plaintiff received a shower within three days of his placement in isolation. Id. at ¶ 29. Furthermore, there is no evidence that Plaintiff incurred an injury because he was allegedly prohibited from immediately washing the pepper spray from his eyes. Therefore, because there is no evidence of personal involvement by the Defendants or that Plaintiff incurred an inhumane condition of confinement, Defendants Hartshorn, Howard and Galloway are entitled to summary judgment on this claim.

Based on the foregoing:

1.   The defendant's unopposed summary judgment motion [56] is granted. The clerk of the

      court is directed to enter judgment in favor of the defendant and against the plaintiff. All pending motions are denied as moot, and this case is terminated, with the parties to bear their own costs.

2. If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).

Enter this    17th   day of March 2009.

**s\Harold A. Baker**

_____
Harold A. Baker
United States District Judge